612

Augustus BLOUNT et al., Plaintiffs,

v.

PEERLESS CHEMICALS (P.R.) INC.,
and Peerless Oil & Chemical
Corp., Defendants.

No. 61 Civ. 754.

United States District Court
E. D. New York.

May 3, 1962.

Urban S. Mulvehill, New York City, (Terhune, Gibbons & Mulvehill, New York City, of counsel), for defendant Peerless Chemicals (P.R.) Inc., in support of motion to vacate service of process.

George J. Engelman, New York City, for plaintiffs, opposed.

DOOLING, District Judge.

Plaintiffs are longshoremen, who live in Maryland; they allege that while they were working on the S. S. Frances in Baltimore harbor on March 28, 1961 they were injured by noxious fumes that emanated without warning from fifteen cylinders that "the defendants" had sent from Puerto Rico to Baltimore aboard the S. S. Frances under bills of lading that described the cylinders as "EMPTY CHLORINE CYLINDERS"; the claim is that the defendants were negligent because the cylinders were represented to be empty and were not and because the cylinders were not tight but unseaworthy; Peerless Oil & Chemical Corp. promptly answered on the merits. Peerless Chemicals (P.R.) Inc. as promptly moved to vacate the service of summons on the ground that it does not conduct business in this jurisdiction and that the very point is *res judicata* by reason of the decision of Judge Lloyd F. McMahon, rendered in a case brought in the Southern District Court by the same plaintiffs against the same defendants for the same cause, which granted this Puerto Rican company's "motion * * * to vacate service of the summons and complaint and to dismiss the action for improper venue".[1]

1. The Clerk's judgment entered on Judge McMahon's decision was that Peerless

Chemicals (P.R.) Inc. "have judgment against the plaintiffs and the service of

In passing on the motion of Peerless (P.R.) made in the earlier action Judge McMahon said that any possibly permissible inferences contrary to a conclusion that the Company was not engaged in a continuous and systematic course of business within New York State would indicate that, if Peerless (P.R.) is doing business anywhere in New York State, it is doing it in the Eastern and not the Southern District of New York.

The present action in this District followed. On Peerless (P.R.)'s motion to vacate service Judge Joseph C. Zavatt has heretofore rejected the *res judicata* argument; he directed that decision of the motion to vacate be held in abeyance pending plaintiffs' taking Peerless (P.R.)'s deposition on the doing business issue. That has now been done and the motion has been resubmitted for decision on the original papers, on the deposition and exhibits, and argument.

Peerless Oil & Chemical Corp. has been engaged in the purchasing, warehousing, marketing and delivering of industrial chemicals and petroleum products. Its warehouse and headquarters are in Long Island City; it has three stockholders, who are brothers; Dennis Carey, its president and treasurer, and a director; John R. Carey its vice-president, and a director, and Edward M. Carey, its third director, who is not active in the company and rarely visits its office; (he is actively associated with another and unrelated business enterprise).

Before 1959, commencing in 1952 or 1953, Peerless had sold industrial chemicals to Puerto Rican buyers through usual export channels and to one principal account in Puerto Rico. Dennis Carey made a survey of the possible chemicals market in Puerto Rico and concluded that a profitable venture there was possible (without benefit of the Puerto Rican tax exemption) in a line of industrial chemicals that would embrace some chemicals not dealt in by Peerless New York as well as chemicals in which it did deal.

Principally on the initiative of Dennis Carey, Peerless (P.R.) was incorporated under the laws of Puerto Rico in February 1959 to enter the chemical trade in Puerto Rico. Its capital was $5,000 and Peerless New York paid in that entire amount; Peerless New York received, ultimately, 4,996 shares of stock; four shares were held in the names of the directors, Dennis Carey, who also became president of Peerless (P.R.), Jose Vivas, counsel to Peerless (P.R.) in Puerto Rico and also its secretary and treasurer, John J. Orr, vice-president, and Denby Varley. Hugh L. Carey, originally a director, ceased to be such in January 1961 when he assumed the duties of his public office. Peerless New York and Peerless (P.R.) had only one director in common and one officer, Dennis Carey, for he became president of Peerless (P.R.).

Peerless (P.R.) started business early in 1959. It acquired land in Puerto Rico and commenced to build (and completed later in 1959) a chemical warehouse and also a storage tank for liquid caustic soda. The land purchase and construction were financed by a $60,000 loan contracted in Puerto Rico and guaranteed by Dennis Carey individually. The stock certificates issued by Peerless (P.R.) are kept in Puerto Rico by Vivas. Peerless New York has made no loans or advances [2] to Peerless (P.R.) and has not guaranteed any of its contracts or obligations. The directors' meetings of Peerless (P.R.) are held in Puerto Rico and occur several times a year; none has been held in New York. Dennis Carey receives no compensation as president of the Puerto Rican corporation but is reimbursed by it for the expenses incurred on his trips to Puerto Rico on its business; the company operates at a profit but has not yet paid a dividend; it has made payments on account of its Puerto Rican loan. Dennis Carey goes

---

summons and complaint is vacated and the complaint is dismissed."

2. Inter-company indebtedness on sales from parent to subsidiary has existed in substantial amount.

to Puerto Rico on Peerless (P.R.) business once every month or two months and stays from three days to a week on such trips.

Peerless (P.R.) deals in chemicals of the kind dealt in by Peerless New York but also deals in liquid caustic soda, certain phosphate products, chlorine and certain chlorinated products; Peerless New York does not deal in these latter products. Peerless (P.R.) buys its chemicals from Wyandotte Chemicals International (its principal supplier), from Jones Chemical Co., of Buffalo, from the Westvaco Mineral Products and the FMC International divisions of Food Machinery and Chemical Corporation (FMC Corporation) and from Peerless New York. Ten percent in volume and thirty percent in value of Peerless (P.R.)'s chemicals are bought from Peerless New York on the same terms on which Peerless New York sells to the rest of the trade. The purchases from Peerless New York are of two classes: first, chemicals sold out of the warehouse stocks of Peerless New York; and, second, chemicals bought by Peerless New York and resold by it to Peerless (P.R.) but shipped by the ultimate supplier directly to Peerless (P.R.) on invoices rendered to Peerless New York. Sales of the second class by Peerless New York to Peerless (P.R.) represent about ten percent of Peerless New York sales to Peerless (P.R.). The Puerto Rican company buys from Peerless New York those chemicals in which both companies deal; its purchases through Peerless New York of ship-direct chemicals are, in part at least, occasioned by the fact that some suppliers will not ship out of the continental United States unless the "foreign" consignee pays in advance of shipment; this complication is avoided by having Peerless New York buy the chemicals and it then resells them to Peerless (P.R.).

Peerless (P.R.) has bought chemicals from Peerless New York approximately as follows: in 1959, $55,000; in 1960, $80,000; and in 1961, $130,000. Peerless New York renders regular invoices upon shipment and Peerless (P.R.) pays in round amounts by checks drawn on its own Puerto Rican Bank. Such payments have, not infrequently, resulted in a credit balance in favor of Peerless (P.R.) in the running account between the companies and such credit balances at times continued, particularly in the earlier part of the period, for considerable intervals.

Wyandotte, Jones Chemical and FMC International have sold and shipped their products directly to Peerless (P.R.) and billed it. Westvaco Mineral Products Division, however, has made its sales of chlorine to Peerless New York but has shipped to Peerless (P.R.) via rail to Bull Lines, Baltimore, and via Bull Lines from Baltimore to Puerto Rico; the Bull Lines bills of lading show Peerless New York as the shipper to Puerto Rico in such transactions. The chlorine is delivered by Westvaco in cylinders that Peerless New York bought from Westvaco in 1959 and resold in 1959 to Peerless (P.R.). After each lot of chlorine (usually 14 or 15 cylinders) is used up, Peerless (P.R.) ships the cylinders back to Westvaco via Bull Lines to Baltimore under a bill of lading by the terms of which arrival notice is to be given only to Peerless New York. Apparently this has not in practice been done; Bull Lines seems to load the returned empty cylinders directly to Westvaco flatcars on arrival in Baltimore without further instruction and Westvaco advises Peerless New York when it has received the cylinders at its plant for refilling.

Dennis Carey, as president of Peerless (P.R.), decides questions about its corporate policies, such as its choice of products and marketing policies; he offers advice to those in charge of the Puerto Rican company's day-to-day operations and he periodically visits Puerto Rico on the company's business. He keeps informed on market conditions and price trends on behalf of the Puerto Rican company as well as on behalf of Peerless New York. It is a fair inference that by teletype, letter and telephone Dennis Carey preserves a continuing liaison with Peerless (P.R.), is

available to it for advice and guidance that are sought and extended, and from time to time performs in New York characteristically executive acts related to the affairs of Peerless (P.R.). He has the authority to sign checks on the Peerless (P.R.) Puerto Rican bank account and he has signed such checks in New York, though how often and how importantly is not shown.

Peerless (P.R.) is in no sense a department or agency of Peerless New York. Its business is distinct in composition and location and it has its own operating personnel. No doubt its substantial purchases from Peerless New York and the credit advantage to it of buying such products as the Westvaco chlorine through Peerless New York (possibly at a profit to Peerless New York) reflect practices that might not have existed were the companies not parent and subsidiary; but they are that and such favoritism in trade, if it be such, is neither agency nor impropriety. Equally, it does not appear that Peerless New York was the agent or implement of Peerless (P.R.). The parties were free to choose their forms of doing business with each other and there is no indication that they violated the integrity of the forms they chose or rendered them unreal by any course of conduct shown in the evidence.

The case comes down ultimately to the effect to be given to Dennis Carey's activities in New York. Apart from those, Peerless (P.R.) was simply not here; it was not qualified to do business here, had no payroll employees here, paid no taxes and held no property here and did not in anyway create any appearance of being here, as by a listing in the telephone book or on any door.

Certainly the Company's president never for a moment ceased to be that. What Dennis Carey did in the interest of Peerless (P.R.) while in New York was certainly business activity in its inclusive meaning but the sense of the record is that it was the interpolation here of concerns that belonged to a genuinely Puerto Rican set of business activities.

The sense of the record is that his activities were essentially Puerto Rican, though carried on from here when he was here; they were not, it would appear, activities that required, or greatly profited by, his being here; New York was not the locus of his presidency of Peerless (P.R.).

It is concluded on the facts, that jurisdiction over Peerless Chemicals (P.R.) Inc. has not been obtained. Cf. McInness v. Fontainebleau Hotel Corp., 2nd Cir. 1958, 257 F.2d 832, 833; Horwitz v. Shainbag, E.D.N.Y.1959, 171 F.Supp. 75, 76.

In view of the decision in Goldlawr, Inc. v. Heiman, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39, plaintiff may, within ten days submit any suggestion it considers appropriate under that case and F.R.Civ.P. 54(b) as amended and a proposed order giving effect to its suggestion and Peerless (P.R.) Inc. may within five days thereafter submit any responsive material and a proposed order giving effect to its suggestion.