SEABOARD FRUIT DISTRIBUTORS, INC., Respondent, *v.* CARLTON-MOORE CO., INC., Appellant.

First Department, January 20, 1922.

Corporations — foreign corporation not maintaining place of business in this State and not having obtained leave to do business here — service of summons on officer temporarily sojourning in this State gives no jurisdiction, although he assumed to conduct negotiations but made no purchase for joint account of himself and his corporation.

Service of a summons on one of the vice-presidents of a foreign corporation having no office or place of business in this State and never having applied for or obtained leave to do business here, while said officer was temporarily sojourning here, does not give the court jurisdiction of the corporation in an action on contract, where, taking the testimony in the light most favorable to the plaintiff, it may be inferred that the vice-president was in this State with an understanding with the defendant corporation that, in his discretion, he was to purchase or to negotiate

for the purchase of produce for their joint account and that, although on this occasion he made no such purchase, he assumed to conduct negotiations therefor and represented that he was conducting them for the defendant.

APPEAL by the defendant, Carlton-Moore Co., Inc., appearing specially, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 21st day of May, 1921, confirming the report of a referee appointed by the court on defendant's motion to vacate the service of the summons, to take and report evidence together with his opinion thereon with respect to whether the vice-president of the defendant was in the State at the time of the service of the summons upon him in connection with the affairs of the defendant, and denying the motion to vacate the service of the summons.

*Frank H. Reuman* of counsel, for the appellant.

*Kahn & Zorn* [*Frederick Zorn* of counsel; *Joseph Kahn* with him on the brief], for the respondent.

LAUGHLIN, J.:

Plaintiff is a domestic corporation engaged in the business of buying and selling fruit and other produce, and the defendant is a Pennsylvania corporation engaged in the same line of business, and receives fruit and vegetables on consignment. The action is on contract to recover the balance alleged to be due and owing from the defendant to the plaintiff on a sale by the defendant for the account of the plaintiff of a quantity of apples. It does not appear where the contract was made. The summons was served at the Seneca Hotel in the city of Rochester, N. Y., on the 30th day of October, 1920, on one Carlton, a vice-president of the defendant, who resides in South Carolina. The only place of business maintained by the defendant is at Philadelphia, Penn. It has never had an office or place of business in this State, or applied for or obtained leave to do business here. The ground upon which plaintiff claims that jurisdiction over the defendant was obtained by the service of summons is that its vice-president, at the time of the service of the summons upon him, was within the State on the business of the defendant. It predicates this claim on

an affidavit showing that it was a well-recognized custom for persons and corporations engaged in the fruit and vegetable business to send buyers to Rochester in the months of September and October; that defendant's president, one Moore, was in Rochester late in September that year, and talked with fruit buyers concerning the buying and selling of fruit, and that Moore had been repeatedly in New York State and in West Virginia and Florida in connection with the business of purchasing fruit or vegetables for the defendant; that Carlton had been stopping at said hotel for three weeks prior to the service of the summons on him, and during that time had almost every day at the hotel talked with various fruit and vegetable buyers and sellers, and the plaintiff's general manager had had long conversations with him regarding entering into a joint venture with Carlton for defendant and purchasing and selling cabbage, and that Carlton agreed to telephone defendant's president in Philadelphia with respect to going into the joint venture with the plaintiff with a view to purchasing and storing 500 tons of cabbage, and that Carlton informed him the next day that defendant's president declined to go into the venture; that the deponent " also knows that the defendant corporation has done and is doing an extensive business in New York State with fruit growers and commission houses, namely, William O'Connor of Medina, New York, and many others." On the reference Carlton testified that he received no salary or remuneration from the defendant and was actively engaged in business for himself, buying and selling fruit and vegetables on joint account with the defendant and four or five other houses, and that he paid his own expenses in traveling about and buying, and that after buying he would take the defendant or another house in with him on joint account; that at the time of the service he was in Rochester on his own business without any authority from the defendant; that early in August he came into this State from South Carolina and went to a convention in Chicago, and from there to Detroit, where he bought an automobile which he brought to Rochester and left in a garage, and returned to South Carolina and came back with his wife to Rochester, about three weeks before he was served, solely for pleasure and on a vacation; that while in Rochester he had no

business communication with the president of the defendant and did not talk with him over the telephone with respect to the joint venture in cabbage, although he informed the plaintiff's general manager that he did in order to get rid of him; that while in Rochester, he bought two or three carloads of apples on joint account with a Baltimore house, but neither did nor negotiated any business on joint account for the defendant, but that he had done business in this State on two or three occasions for joint account with the defendant; that he buys for himself only and then offers the shipment to one of the houses with whom he has transacted business on joint account, and if they want it, they take it, and if not, they reject it; that he had no arrangement either in writing or orally with the defendant that he was to buy goods and that it would handle them with him on joint account, and that such arrangements are always made after he buys for himself; that prior to the service of the summons he had no contract in writing with the defendant authorizing or purporting to authorize him to purchase for the account of the defendant or to do business for it in this State, but that there was a general understanding between them to the effect that, if he cared so to buy, they accepted the purchase on joint account, and that he determined what house to take in with him on the joint account and had the produce shipped to it, and in that manner assumed to purchase on joint account with defendant and to ship to it, and it accepted what he so purchased and sometimes paid part of the purchase price and they divided the profits or shared the losses equally; that if he bought during the three weeks he was in Rochester and tendered the purchase as on joint account, the defendant would accept, but that they had no agreement to that effect and the defendant was free to reject, for the purchases are made by and paid for by him personally and then he makes arrangements to handle all or part on joint account; and that after purchasing, he would get in touch with the defendant or another house if desirous of having one of them take the purchase on joint account with him, according to where he would think there would be the best market for the produce; and that he buys for himself and then makes it a joint account.

Plaintiff does not contend that the evidence with respect to

the defendants' having theretofore transacted business here is sufficient to show that it was "here, not occasionally or casually, but with a fair measure of permanence and continuity," as would be necessary to warrant a finding that it was doing business within the State so as to authorize the service of the summons upon an officer regardless of whether he was at the time of such service within the State on its business. (See *Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 267; *Lumbermen's Ins. Co.* v. *Meyer*, 197 U. S. 407; *St. Louis S. W. Ry.* v. *Alexander*, 227 id. 218; *Riverside Mills* v. *Menefee*, 237 id. 189; *Dollar Co.* v. *Canadian C. & F. Co.*, 220 N. Y. 270; *Berner* v. *Collier Co., No. 1*, 179 App. Div. 732; *Fleischmann Const. Co.* v. *Blauner's*, 190 id. 95; *Sunrise Lumber Co., Inc.*, v. *Biery Lumber Co.*, 195 id. 170; *Cochran Box & Mfg. Co., Inc.*, v. *Monroe Binder Board Co.*, 197 id. 221; *National Furniture Co.* v. *Spiegelman & Co., Inc.*, 116 Misc. Rep. 53; affd., 198 App. Div. 672.) Plaintiff's sole contention with respect to the business theretofore transacted here by defendant is to show that at the time of the service of the summons on Carlton, he was here representing the defendant for the purpose of buying in his discretion on joint account for himself and it. In that connection it must be borne in mind that he was not in the employ of the defendant and was here at his own expense and to some extent, at least, if not wholly, on business for himself. It will be observed that his testimony concerning his authority to buy for the joint account of himself and the defendant is conflicting, and while he expressed confidence that the defendant would accept any purchases made by him for his and its joint account, he says that it was not under any contractual obligation to him so to do and could reject such purchases. The view of his testimony most favorable to the plaintiff is that it may be inferred therefrom that there was an understanding between him and the defendant that in his discretion he was to purchase or to negotiate for the purchase of produce for their joint account, and that, although on this occasion he made no such purchase, he assumed to conduct negotiations therefor and represented that he was conducting them for the defendant. The only theory upon which the plaintiff claims that the service can be sustained is that Carlton at this particular time was here on

defendant's business; and that it claims, on the authority of *Riverside Mills* v. *Menefee* (*supra*) and *Lumbermen's Ins. Co.* v. *Meyer* (*supra*), is sufficient. There are expressions in the opinions in those and in other cases tending to support that contention but the Federal courts in this district and circuit have held that a single act of corporate business transacted by an officer of a foreign corporation in another State at the time of the service upon him is not sufficient (*Day & Co., Inc.,* v. *Schiff-Lang & Co.,* N. Y. L. J., Nov. 21, 1921, and cases cited) and this court plainly so intimated, at least, if it did not so hold in *Berner* v. *Collier Co., No. 1* (179 App. Div. 732); but since the evidence does not clearly show that Carlton was here on the defendant's business, it is not necessary now to decide whether service made on an officer of a foreign corporation concededly in another State for a single business transaction for it could be sustained if it appeared that the corporation had not theretofore transacted business within the State within the rule announced in *Tauza* v. *Susquehanna Coal Co.* (*supra*).

It follows that the order should be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

CLARKE, P. J., DOWLING, PAGE and MERRELL, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.