IRVING A. HARTSTEIN and EDWARD N. HARTSTEIN, Copartners, Trading under the Firm Name and Style of I. A. HARTSTEIN & Co., Respondents, *v.* SEIDENBACH'S, INC., Party Intended Being a Corporation Engaged in the Retail Ready-to-Wear Business at Tulsa, Oklahoma, Appellant.

Supreme Court, Appellate Term, First Department, June 4, 1927.

Corporations — foreign corporations — action against foreign corporation — service of summons on defendant's secretary valid — contract executed in this State — defendant doing business in this State.

The defendant, a foreign corporation, operating a retail store in Oklahoma and maintaining in this State an office in which purchases of merchandise are

Appellate Term, First Department, June, 1927. [Vol. 129

regularly and systematically made, and in which it also keeps books, stationery and advertising matter incidental to the business, is doing business within this State, and the summons served upon its secretary, while in this State doing business here, is valid.

DELEHANTY, J., dissents, with memorandum.

APPEAL by defendant from an order of the City Court of the City of New York, denying its motion to set aside the service of a summons upon it, a, foreign corporation, organized under the laws of the State of Oklahoma.

*Siegel & Corn [Isaac Siegel* of counsel], for the appellant.

*Benjamin A. Hartstein,* for the respondents.

LEVY, J. The summons was served on defendant's secretary who was here on business of the corporation. Defendant occupies a retail store on Main street, Tulsa, Okla., where merchandise, principally ladies' apparel, is sold at retail. Most of the purchases for the corporation, as shown by the affidavit of its president, are made from manufacturing concerns in New York city, and the orders for them are given on order blanks in accordance with the form annexed to the moving papers. Other than the purchase of goods to be sold at retail at Tulsa, no business of any kind is transacted in the State of New York. Defendant's president avers that the corporation has no property in this State, has no bank account here, and none of its officers or directors resides in New York. Upon defendant's order blank it is stated: " Duplicate bills must positively be mailed to Seidenbach's, care of Oscar Abel, 501 7th Avenue, otherwise not responsible for prompt payment." It may be observed the contract in suit was made in this State.

Although defendant claims it has no office in the State of New York, it appears that it maintains a room in a suite of offices hired by one Abel at 501 Seventh avenue, " a resident buyer " for twenty-nine out-of-town buyers, including defendant. This room or office is an inner one in the suite and on the door appears " Mr. Seidenbach," the name of defendant's president. The latter urges that no rental as such is paid for this room, but that Abel is compensated for his services in making " tentative " purchases of goods to be shipped to Oklahoma, " but this is done by him not only merely when directed, but at such times as your deponent is absent from the city of New York. These directions are mostly directions given by mail or as the result of verbal instructions. He has no general authority to bind the corporation, and all orders given by him are subject to approval, which approval is mostly made at the office at Tulsa, Oklahoma." But on the letterheads of

defendant appears: " New York City Office, 501 Seventh Avenue, New York." Moreover, plaintiffs' affidavits show that upon the desk in the room or office occupied by Seidenbach is a brass plate reading: " J. L. Seidenbach," the name of defendant's president; that in the office is a large framed advertisement of the Tulsa *Daily World,* dated March 23, 1923, containing a two-page advertisement of Seidenbach's first anniversary sale, and that there are books of the corporation there; and three of said books have " Seidenbach " in large letters on the outside, and that they are respectively stamped " Coats and Suits," " Miscellaneous " and " Dresses." Stationery of defendant is also in that office.

Was jurisdiction acquired by the service of process? To justify service upon a foreign corporation in the circumstances in this case, there must be evidence that it was doing business here. What constitutes *doing business* on the part of such a corporation has been the subject of considerable controversy, on which there is a variety of decision, much of it not entirely harmonious. One of the causes of confusion is that the test of doing business has been variously applied to three different legal purposes, (1) the necessity of a license under the licensing statutes; (2) the liability to a tax on corporate activities; (3) the subjection to service of process. (*Day & Co.* v. *Schiff, Lang & Co.,* 278 Fed. 533, 535.) Notwithstanding the fact that a lesser degree of business activity is required to authorize service than in the other cases, the higher standards have been frequently applied on questions involving validity of service. The distinction, however, is clearly pointed out by Judge CARDOZO in *Tauza* v. *Susquehanna Coal Co.* (220 N. Y. 259, 267, 268), where in referring to the greater degree required to make a corporation subject to license statutes, he says: " But activities insufficient to make out the transaction of business, within the meaning of those statutes, may yet be sufficient to bring the corporation within the State so as to render it amenable to process * * *. But the problem which now faces us is a different one. It is not a problem of statutory construction. It is one of jurisdiction, of private international law * * *. The nature and extent of business contemplated by licensing statutes is one thing. The nature and extent of business requisite to satisfy the rules of private international law may be quite another thing."

In *Anderson* v. *Morris & E. R. Co.* (216 Fed. 83, 88) the court states that " a much broader meaning is said to be given to the words ' doing business ' when used in a tax statute than is given to them when used in a statute which forbids a foreign corporation

to do business in a State until it has complied with the conditions which the statute imposes." (See, also, *International Fuel & Iron Corp.* v. *Donner Steel Co., Inc.,* 242 N. Y. 224.) The distinction between the classes of cases is aptly summed up by Mr. Elcanon Isaacs in an article entitled "An Analysis of Doing Business," 25 Columbia Law Review 1018, 1045: "The business which must be transacted by a foreign corporation to permit service of process must be such as to warrant the inference that the corporation is *present.* To subject such a corporation to taxation for doing business, the transactions must not only show that the corporation is present but also that it is *active.* In order that qualification be rendered necessary, the corporation must not only be present and active, but its activity must be *continuous.*"

The principles embodied in this summary are founded upon sound reason, as appears if we contrast the nature of the *presence* of a corporate entity with that of an individual. Personal service upon the latter within the jurisdiction, except in specially privileged cases, is always sustainable regardless of citizenship or residence. That must follow from the fact that by his presence the individual is personally amenable to the laws of the State, and a judgment against him will directly subject all his property within the jurisdiction to lawful mandate, and, by the principles of comity and the "full faith and credit" clause of the Constitution of the United States, may ultimately affect all his other property wheresoever situated. Obviously, a natural person can be present only in one place at a given time. A corporation has no such individuality, but must manifest its presence by various functions expressed by the activities of its agents with relation to property rights. The exercise of such functions may cover many scattered localities. While a person may also spread his business dealings over several States at the same time, yet for purposes of subjecting himself to jurisdiction he is only present in the one place, and of course the jurisdiction where he is thus present at the moment is the only one in which he can then be personally served. But by a fiction of the law a corporation (an artificial or juristic person) is presumed to be present in the State in which it is incorporated; and since it has no personality of its own and can only act through agents, service upon certain of its authorized representatives is in proper circumstances deemed personal service upon the corporation. Likewise, where a corporation has filed a certificate of doing business in another State, it is held to be present there, and as a consequence is answerable to the due service of process in a manner similar to domestic entities, although it is likewise present at the same time in the State of its creation. A corporation, however, may also

manifest its vicarious presence in a jurisdiction other than that in which it is domiciled or in which it has secured a license to do business. It may make purchases or sales in such locality, collect debts, or perform other commercial functions. Such activities would necessarily be performed by responsible agents, and accordingly the question arises whether the corporation in such event should be regarded as present for the purpose of authorizing service upon it by the delivery of process to any such representative. The decisions imply that a casual or occasional presence of this kind is not sufficient for the purpose of such service. (*Hunau* v. *Northern Region Supply Corp.*, 262 Fed. 181; *Seaboard Fruit Distributors, Inc.*, v. *Carlton-Moore Co., Inc.*, 199 App. Div. 612.)

When, however, by continuous business activities through its officers or representative agents a corporation has signified its presence here, it should not be permitted to evade service. Since it partakes to a certain extent of ubiquity or multipresence — a quality not possessed by natural persons — it may be said to be present and subject to process wherever it transacts a substantial measure of responsible business activity. Casual presence is not sufficient, and continuity of activity is not always easy to prove. While the question of what constitutes doing business for this purpose is largely one of fact to be determined by the court upon the particular circumstances of each case (*People's Tobacco Co., Ltd.*, v. *American Tobacco Co.*, 246 U. S. 79), and the degree of continuity is also one of fact, nevertheless, where the corporation has avowedly and notoriously held itself out as maintaining an office within the jurisdiction of the pending action, and has repeatedly and continuously made substantial purchases in that office, where it has also kept books, stationery, advertising matter and other paraphernalia incidental to the business, further proof that it is engaged in *continuous* business would seem to be merely cumulative. In the case before us, defendant was engaged in the retail business of ladies' apparel in parts remote. It is perfectly true that it did not have a branch retail establishment in this State. But to properly carry on its business in Tulsa, it was absolutely necessary for it to make purchases of goods to be sold by it at retail. These were made regularly and systematically in the city of New York and to facilitate such transactions, defendant had in fact established a place of business at 501 Seventh avenue and proclaimed the existence of such place on its letterheads. Although the name on the door of the office selected by defendant was " Mr. Seidenbach," and not " Seidenbach's, Inc.," this slight variance under the circumstances, is of no legal significance. Indeed the doctrine of estoppel might well be invoked in support of juris-

diction, in favor of a creditor dealing with defendant, in this situation.

In *Fleischmann Construction Co.* v. *Blauner's* (190 App. Div. 95) the court sustained service in a case which involved a systematic series of purchases by the corporation in this State, and yet lacked the determining element of the instant case — the maintenance of an office and the announcement on the letterheads. There the defendant was a corporation carrying on a ready-to-wear retail trade in Philadelphia. It did no manufacturing, but purchased the goods which it later sold to its customers. While the defendant had no office in New York, it had a resident buyer, who also represented seventeen other houses, and defendant paid him a salary for his services. This buyer, however, did not purchase for defendant, but simply looked up available merchandise and notified the latter as to the kind and price of goods that was available. The secretary of the corporation had fifteen of its buyers under his supervision and he visited New York in their company every week, remaining in the city from one to four days to buy goods for his concern in amounts aggregating many thousands of dollars. In deciding that the defendant was doing business in such a manner as to sustain service upon the secretary, Mr. Justice DOWLING (now presiding justice), in behalf of the Appellate Division, said (at p. 97): " While defendant's business is that of selling merchandise to the public, it cannot pursue that business unless it has merchandise to sell. It does not manufacture any of the articles in which it deals; it must buy them. It cannot sell anything· that it has not first bought from others. Its purchases in New York city are not isolated or casual, but are customary, regular and systematic."

A similar thought, showing in addition the possible hazard to merchants in the event of a contrary doctrine, was expressed in *National Furniture Co.* v. *Spiegelman & Co., Inc.* (198 App. Div. 672, 674): " A corporation coming here by its officers to examine goods, and making a contract to purchase goods, for which it afterward refuses to pay, is doing business here. It would be doing a very profitable business if the seller could not compel payment where the contract was made when the defendant came on another business errand of the same character."

True it is that the United States Supreme Court in *Rosenberg Bros. & Co., Inc.,* v. *Curtis Brown Co.* (260 U. S. 516) held that visits on business of purchasing goods, even if occurring at regular intervals, would not necessarily warrant the inference that the corporation was present within the jurisdiction of the State where this occurred. On the other hand, that case lacked an important

factor present here, in that defendant neither had an established place of business in New York, nor made any announcement in that direction. It is argued that to declare a corporation subject to process merely because it comes for the regular purchase of goods, is to discourage it from coming and thus deprive our citizens of certain advantages of trade. It seems to us the effect should be quite the opposite. A foreign corporation present under the circumstances here disclosed, may well be said to be dealing with merchants in this State upon the implied assurance that any controversy arising will not have to be determined in a foreign forum. If our citizens, lulled into the belief that they can safely transact business with such foreign corporations, should come to the realization that they must proceed to a distant State to enforce their claims, they will very likely cease to do business with these concerns. It requires no serious reflection to appreciate just what this might mean not only to the commerce of the State, but of the nation as well. For of what profit could it be to merchants to do very substantial business with foreign corporations which regularly visit here, if they should be unable to collect the avails of their sales in the event of controversy, without the difficulty and expense of enforcing their rights at distant points? A similar thought was expressed in *Connecticut Mutual Life Insurance Co.* v. *Spratley* (172 U. S. 602, 619): " It was well said in *Railroad Company* v. *Harris,* 12 Wall. 65, 83, by Mr. Justice SWAYNE, in speaking for the court, in regard to service on an agent, that ' When this suit was commenced, if the theory maintained by the counsel for the plaintiff in error be correct, however large or small the cause of action, and whether it were a proper one for legal or equitable cognizance, there could be no legal redress short of the seat of the company in another State. In many instances the cost of the remedy would have largely exceeded the value of its fruits. In suits local in their character, both at law and in equity, there could be no relief. The result would be, to a large extent, immunity from all legal responsibility.' "

Furthermore, there is much force and value in the observation made in the following quotation from *National Furniture Co.* v. *Spiegelman & Co., Inc.* (*supra,* 673): " Particularly is jurisdiction given when the contract sued on is one made in this State by the defendant through the agency of the officer on whom process is served, and parties should not be denied the right to resort to the courts of this State, where the contract is made and the business is done out of which the dispute arose."

One of the elements there referred to, namely, the making of the contract in this State, is also present in the instant case; and while

the process here was not served upon the officer who made the contract, it was served upon the secretary who concededly was present on the business of the corporation.

In *International Harvester Co. of America* v. *Commonwealth of Kentucky* (234 U. S. 579, 589) the court says: "We are satisfied that the presence of a corporation within a State necessary to the service of process is shown when it appears that the corporation is there carrying on business in such sense as to manifest its presence within the State, although the business transacted may be entirely interstate in its character."

What better manifestation can there be of the *presence* of defendant within the State than its own announcement that it is here with an apparent degree of permanence, evinced by the facts, and is actually doing business? We think, possibly none, except the maintenance of a sales establishment within the State. And no one can seriously contend for such a prerequisite to confer jurisdiction.

The order should, therefore, be affirmed, with ten dollars costs and disbursements.

LYDON, J., concurs.

DELEHANTY, J. (dissenting). I dissent on the following authorities: *Rosenberg Bros. & Co., Inc.,* v. *Curtis Brown Co.,* (260 U. S. 516); *Bank of America* v. *Whitney Central Nat. Bank* (261 id. 171); *Penn Collieries Co.* v. *McKeever* (183 N. Y. 98); *Hovey* v. *DeLong Hook & Eye Co.* (211 id. 420); *Holzer* v. *Dodge Bros.* (233 id. 216); *Ultramar Co., Ltd.,* v. *Minerals Separation, Ltd.* (236 id. 647); *International Fuel & Iron Corp.* v. *Donner Steel Co., Inc.* (242 id. 224).