Harriett MacINNES and Malcolm D. MacInnes, individually and as husband and wife, Plaintiffs-Appellants,

v.

FONTAINEBLEAU HOTEL CORP., Defendant-Respondent.

No. 185, Docket 24783.

United States Court of Appeals Second Circuit.

Argued March 4, 1958.

Decided July 25, 1958.

Sidney W. Rothstein, New York City (Louis G. Greenfield, New York City, on the brief), for plaintiffs-appellants.

Harry S. Clyne, New York City (Steinberg & Clyne, New York City, on the brief), for defendant-appellee.

Before LUMBARD, WATERMAN and MOORE, Circuit Judges.

MOORE, Circuit Judge.

The defendant owns and operates a large resort hotel in Miami Beach, Florida. The plaintiffs, residents of Scarsdale, New York, allege that while guests in the hotel slanderous, false and defamatory statements about them were made in the hotel lobby by defendant's agents. They brought this action in the federal court in the Southern District of New York and caused service to be made on an employee in defendant's New York office. Defendant then moved to set aside the service on the ground that it was not doing business in New York. The court below granted the motion.

The question of what constitutes "doing business" has been presented to the courts many times over the years. Search for a guiding rule for general application shows that the various decisions lack uniformity and harmony and invariably culminate in the scarcely enlightening conclusion that each case must be decided upon its own facts. Yet from the many opinions there can be gleaned a few principles which commend themselves for practical use. If they be sound they should be followed because here is a field in which as much certainty and predictability as possible is to be desired. Many a business will open, or refrain from opening, an office in another state or expand or contract its activities there depending upon the opinion of counsel based upon court decisions as to whether the contemplated activity crosses the nebulous "doing business" borderline.

The nature and character of the business is an important factor. Is the business in the home state of such a nature that it can be carried on in other states bringing in revenue from the business operations conducted there?

Here the business is that of a hotel. All the facilities and attractions offered to its guests, such as, shelter, recreation, and entertainment must be furnished to the guests within the confines of the hotel property in Miami Beach. Defendant's entire business, of necessity, must be carried on there. Defendant may seek to attract patrons by newspaper ads throughout the United States and may even have offices in the larger cities for reservation booking purposes, but it cannot deliver in winter Florida warmth and sunshine to residents of the more northerly states on order by mail, freight or express. There can be no out-of-state delivery on orders taken outside of Florida.

Thus the nature of the hotel business is quite different from such businesses in which traveling salesmen take orders for interstate delivery and use office space in other states as headquarters for their operations.

Judge Learned Hand in Hutchinson v. Chase & Gilbert, 2 Cir., 1930, 45 F.2d 139, has said "It is difficult, to us it seems impossible, to impute the idea of locality to a corporation, except by virtue of those acts which realize its purposes" (at page 141). This comment is peculiarly applicable to the resort hotel.

The defendant maintained a small office in New York City with three employees. Their function was to receive requests for reservations which were forwarded to Florida for confirmation, to answer inquiries and to distribute brochures. A small inactive bank account was maintained in New York and defendant's name was listed in the telephone and building directory and appeared on the door of its office. Defendant's ads referred to its New York office. However, there is no allegation here that plaintiffs booked their reservations through the New York office.

Many resort hotels advertise extensively in the newspapers throughout the country but the facilities maintained for receiving responses to this solicitation, namely, whether by telephone, telegraph or mail to a New York office or to Miami, do not change the situs of defendant's business.

The Supreme Court has held that "solicitation" alone is not sufficient to constitute doing business (Green v. Chicago, Burlington and Quincy Railway Company, 205 U.S. 530, 532, 27 S.Ct. 595, 596, 51 L.Ed. 916). There the railroad, although it had no tracks east of Chicago, maintained an office for the solicitation of freight and passenger traffic in Philadelphia, Pennsylvania. Several clerks and soliciting agents were employed there and orders for passenger tickets and for the handling of freight were executed in that office. The court held that "[a]s incidental and collateral to that business it was proper, and, according to the business methods generally pursued, probably essential, that freight and passenger traffic should be solicited in other parts of the country than those through which the defendant's tracks ran."

However, where there has been additional activity, such as "a continuous course of shipment of machines" with "authority to receive payment in money, check, or draft" a different result has been reached (International Harvester Company of America v. Commonwealth of Kentucky, 234 U.S. 579, 589, 34 S.Ct. 944, 946, 58 L.Ed. 1479). The Supreme Court in the International Harvester case distinguished the Green case, by saying that upon the facts it was satisfied that "the corporation is there carrying on business in such sense as to manifest its presence within the state, although the business transacted may be entirely interstate in its character."

In People's Tobacco Company, Limited v. American Tobacco Company, 246 U.S. 79, 87, 38 S.Ct. 233, 235, 62 L.Ed. 587, the defendant was held not to be doing business although its agents solicited retail orders which were turned over to jobbers who sold defendant's products. The Supreme Court distinguished its previous decision in the International Harvester case, supra, and said "The general rule deducible from all our decisions is that the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state or district where service is attempted."

In International Shoe Co. v. State of Washington et al., 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, the Supreme Court recognized the "solicitation plus" doctrine and upheld jurisdiction upon proof of systematic and continuous business activities in the state. Since there has been "a continuing process of evolution" which in part "is attributable to the fundamental transformation of our national economy over the years" (McGee v. International Life Ins. Co., 1957, 355

U.S. 220, 222, 78 S.Ct. 199, 2 L.Ed.2d 223). "With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines" (Id., 355 U.S. at page 223, 78 S.Ct. at page 200).[1] In contrast the service rendered by the resort hotel remains quite localized.

Examining the decisions in this circuit, where service has been upheld, substantial activity in addition to solicitation is found. Some courts, in deciding the question of "doing business" have given weight to "the consideration of reasonableness in requiring the corporation to defend a particular suit away from its technical or commercial domicile, in the light of its contacts with the forum and an estimate of attendant inconveniences" (Lehn & Fink Products Corp. v. Milner Products Co., D.C.S.D. N.Y.1953, 117 F.Supp. 320, 321).

Other decisions give weight to "whether the liability arose out of events occurring within the state of the forum" (French v. Gibbs Corp., 2 Cir., 1951, 189 F.2d 787, 790) or whether "the suit was based on a contract which had substantial connection with that State" (McGee v. International Life Ins. Co., supra). However, these factors are not present here.

The question of resort hotels doing business in New York has been presented in cases involving the "Sands" in Las Vegas, Nevada (Wiederhorn v. The Sands, Inc., D.C.S.D.N.Y.1956, 142 F. Supp. 448), the "Cloisters" in Sea Island, Georgia (Guile v. Sea Island Co., Sup. 1946, 66 N.Y.S.2d 467, affirmed 272 App. Div. 881, 71 N.Y.S.2d 911, leave to appeal denied 297 N.Y. 781, 77 N.E.2d 793), and, most recently, the Belmar Hotel of Miami Beach, Florida in a decision by the New York Court of Appeals (Miller v. Surf Properties, Inc., 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874). In each of these cases the courts set

aside service made in New York although all three hotels maintained reservation bureaus or facilities in New York.

The order is affirmed.

---

1. For a comprehensive analysis of the development of the law in this field, see "Judicial Jurisdiction over Non-Residents; The Impact of McGee v. International Life Insurance Company" by Professor Willis L. M. Reese in "The Record," March 1958, Association of the Bar of the City of New York, vol. 13, no. 3, p. 139.