339 F.2d 317
 Nettie GELFAND and Phillip Gelfand, Plaintiffs-Appellants,
v.
TANNER MOTOR TOURS, LTD. (a California Corporation), Tanner
Motor Tours of Nevada, Ltd. (a Nevada Corporation), Tanner
Motor Tours Corporation, Limited (a Nevada Corporation),
Tanner Motor Tours, Ltd. (a Nevada Corporation), Tanner
Motor Tours Ltd. of California (a California Corporation)
and Lucky Cab Co. (a Nevada Corporation), Defendants-Appellees.
 No. 83, Docket 28826.
 United States Court of Appeals Second Circuit.
 Argued Oct. 16, 1964.
Decided Dec. 9, 1964.
 
 Fuchsberg & Fuchsberg, New York City (Irving Malchman, Jerome J. Klied, New York City, of counsel), for plaintiffs-appellants.
 O'Brien & Sheil, New York City (Denis R. Sheil, William J. Quinlan, New York City, of counsel), for defendants-appellees.
 Before WATERMAN, MOORE and SMITH, Circuit Judges.
 WATERMAN, Circuit Judge.
 
 
 1
 Plaintiffs, husband and wife, brought suit against the six defendant corporations in the United States District Court for the Eastern District of New York. Jurisdiction was founded on diversity of citizenship, plaintiffs being residents of New York, while defendants are incorporated and have their principal places of business in Nevada and California. Plaintiffs alleged that while riding from Las Vegas, Nevada to Grand Canyon, Arizona in a bus owned and operated by defendants, they were injured when the bus left the highway and crashed into a rock bank. The first three counts in their complaint were based on negligence, the last three on breach of contract of safe carriage. They sought $1,265,000 in damages.
 
 
 2
 Three of the defendants moved to dismiss the action on the ground that they were not subject to personal jurisdiction in New York. In support of their motion they submitted identical affidavits by two of their officers which consisted of allegations that they had neither representatives nor offices in New York and that they neither solicited nor transacted business in the state. In opposition to the motion, plaintiffs submitted affidavits describing the purchase of their tickets through the Herren-Rogers Travel Service on Long Island, reciting certain representations by the Gray Line Sight-Seeing Companies, Associated, of which defendants are members, and detailing the alleged business activities of the Gray Line in New York City through Herbert J. DeGraff.
 
 
 3
 The district court requested these defendants to submit additional affidavits and a copy of the Gray Line tariff. In response, they offered an affidavit by DeGraff relative to his business activities in New York City and his relationship to the Gray Line, an affidavit by an officer of the Gray Line relative to the character of the association and the role of defendants as members, and an affidavit by a partner in Herren-Rogers relative to the particular transaction it had with plaintiffs and the nature of its business generally. Although still somewhat dissatisfied with defendants' presentation, Judge Dooling in a memorandum opinion granted their motion to dismiss the suit. The district court included in its order the three remaining defendants, on the ground that they were mere phantoms. Plaintiffs ask us to reinstate the suit against all six defendants or, at least, to direct a hearing on the question of jurisdiction.
 
 
 4
 In the absence of a federal statute or rule enlarging the jurisdiction of federal courts, the amenability of a foreign corporation to suit in a diversity case is governed by the constitutionally valid law of the state in which the federal court sits. Arrowsmith v. United Press Int'l, 320 F.2d 219 (2 Cir. 1963). Hence the issue presented by this appeal is to be determined in accordance with New York law, insofar as that law is constitutional.
 
 
 5
 The relevant portions of New York's new Civil Practice Law and Rules provide:
 
 
 6
 '301. Jurisdiction over persons, property or status
 
 
 7
 'A court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore.' '302. Personal jurisdiction by acts of non-domiciliaries
 
 
 8
 '(a) Acts which are the basis of jurisdiction. A court may exercise personal jurisdiction over any nondomiciliary, * * * as to a cause of action arising from any of the acts enumerated in this section, in the same manner as if he were a domiciliary of the state, if, in person or through an agent, he:
 
 
 9
 '1. transacts any business within the state; * * *'
 
 
 10
 The Civil Practice Law and Rules went into effect on September 1, 1963. This suit was commenced on December 15, 1963, but the accident on which it is based occurred on May 4, 1962. That plaintiffs' cause of action thus accrued before the effective date of the act creates no problem of timing as to 301, which only continues prior New York law. But as to 302, which creates a new basis of jurisdiction, we are faced at the outset with the question of whether the new provision was intended to apply to suits commenced after September 1, 1963 based on events which occurred previously, and, if so, whether such retroactive application is constitutional. Fortunately, we are not obliged to prophesy New York doctrine on this question,[1] or to render a hypothetical constitutional judgment based on that prophecy. See generally Note, Retroactive Expansion of State Court Jurisdiction Over Persons, 63 Colum.L.Rev. 1105 (1963). Even if 302 validly applies to this suit with regard to the question of timing, it does not provide a basis of personal jurisdiction over defendants for other reasons yet to be stated.
 
 
 11
 301 preserves traditional New York law, under which 'a foreign corporation, not authorized to do business in (the) State, was held amenable to local suit only if it was engaged in such a continuous and systematic course of 'doing business' (there) as to warrant a finding of its 'presence' in (the) jurisdiction.' Simonson v. International Bank, supra, 14 N.Y.2d at 285, 251 N.Y.S.2d at 436, 200 N.E.2d at 429. Once a foreign corporation is found to be 'present' within the state, however, 'jurisdiction does not fail because the cause of action sued upon has no relation in its origin to the business (there) transacted.' Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 268, 115 N.E. 915, 918 (1917). See generally N.Y.Legis.Doc. (1958) No. 13, p. 38. The constitutionality of these doctrines has been approved by the Supreme Court. International Shoe Co. v. State of Washington, 326 U.S. 310, 318, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 446, 72 S.Ct. 413, 96 L.Ed. 485 (1952).
 
 
 12
 On the other hand, 302 was enacted to take advantage of New York's newly acquired constitutional power, derived from International Shoe Co. v. State of Washington, supra, and its progeny, to subject non-residents to personal jurisdiction based on acts occurring within the state. Simonson v. International Bank, supra, 14 N.Y.2d at 288, 251 N.Y.S.2d at 438-439, 200 N.E.2d at 430, 431. The provision is apparently based on that portion of International Shoe Co. v. State of Washington, supra, 326 U.S. at 318-319, 66 S.Ct. at 159, 90 L.Ed. 95, which holds that 'the commission of some single or occasional acts * * * in a state' may be enough to render a person amenable to local suit on causes of action which 'arise out of or are connected with the activities within the state.' See generally N.Y.Legis.Doc. (1958) No. 13, pp. 39-40. Inasmuch as 302 was seemingly designed to take full advantage of International Shoe, that decision, in the absence of authoritative pronouncements by the courts of New York, furnishes us with our guide to interpretation of the new provision, and the provision itself need not present us with an independent issue as to its constitutionality.
 
 
 13
 Plaintiffs' first contention is somewhat apart from 301 or 302 as discussed above. They argue that under traditional New York law, a foreign corporation which represents to the public that it is doing business in the state is estopped from denying that fact in order to thwart local jurisdiction. The Gray Line makes such representations in its brochures and its tariff and plaintiffs maintain that these representations are imputable to defendants as members of the association. We find it unnecessary to decide whether a doctrine of jurisdiction by estoppel would apply in this case, for we hold that New York apparently has no such doctrine.
 
 
 14
 Plaintiffs rely on two New York cases, both over twenty-five years old, which conclude that foreign corporations may be estopped by their public representations from denying that service of process was made upon the proper person under New York law. Society Milion Athena v. National Bank of Greece, 166 Misc. 190, 199, 2 N.Y.S.2d 155, 164 (Sup.Ct. 1937), aff'd, 253 App.Div. 650, 3 N.Y.S.2d 677 (1938); Dreher v. Western Doll Mfg. Co., 198 App.Div. 21, 189 N.Y.S. 422 (1921). It is true that these decisions strongly suggest that the same rule applies to a defense based on lack of presence within the state. But the fact remains that we have not found and have not been cited to any square New York precedents to this effect.
 
 
 15
 On the contrary, recent New York cases pointing out such representations consider them to be but one of several elements tending to prove that the foreign corporation is doing business in the state. International Business Machs. Corp. v. Barrett Div. Allied Chem. & Dye Corp., 16 A.D.2d 487, 229 N.Y.S.2d 547 (1962); Rochester Happy House, Inc. v. Happy House Shops, Inc., 14 A.D.2d 491, 217 N.Y.S.2d 791 (1961). Furthermore, there are leading cases involving such representations in which the courts have concluded that the foreign corporation was not subject to personal jurisdiction in New York. Miller v. Surf Properties, Inc., 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958); MacInnes v. Fontainebleau Hotel Corp., 257 F.2d 832 (2 Cir. 1958).
 
 
 16
 302 seems to work no change in New York law in this respect. It is true that 302 was apparently designed to take advantage of the state's full constitutional powers and it may well be that it is constitutional for the courts of a state to obtain jurisdiction over non-domiciliaries by estoppel. But 302 was specifically based on the principles laid down in International Shoe Co. v. State of Washington, supra, and its offspring. Those principles, as illuminated by the thoughtful opinion of Judge Kaufman in Blount v. Peerless Chems. (P.R.) Inc., 316 F.2d 695, 697 (2 Cir. 1963), cert. denied, 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62 (1963), reflect the view that 'when (a corporation's) activities are given protection by state law, it ill behooves the corporation to complain about appearing there to litigate,' and that 'the state has an interest in subjecting to its judicial process a corporation whose activities in that state expose its residents to a risk of physical harm or economic loss.' These views have little if anything to do with a case involving mere representations of presence within the state. Accordingly we hold that the doctrine of jurisdiction by estoppel seems not to be embraced within the purview of 302.
 
 
 17
 Plaintiffs next contend that their purchase of tickets from defendants through the Herren-Rogers Travel Service on Long Island was a sufficient basis for local jurisdiction under 302. The facts set forth in the affidavits relating to this branch of the case are ample and undisputed. Herren-Rogers is an independent travel bureau not formally associated with defendants. In March, 1962, plaintiffs made reservations through Herren-Rogers for an extended tour, one small leg of which involved travel on defendants' bus line, and paid a deposit toward the expense of the entire trip. Herren-Rogers forwarded the reservations to the various companies involved and obtained confirmations. Early in April, plaintiffs paid the balance of the cost of the full tour and received, among other things, two tickets for the journey from Las Vegas to Grand Canyon. Herren-Rogers remitted the payment to the various companies involved, withholding its commission.
 
 
 18
 302 is limited, insofar as it is relevant, to 'a cause of action arising from * * * business (transacted) within the state.' We assume for the sake of argument that the sale of the tickets by defendants to plaintiffs through Herren-Rogers was a business transaction within New York. We cannot, however, agree that plaintiffs' cause of action in tort arose from that sale. The alleged negligence of defendants, the subsequent injury to plaintiffs, and every relevant occurrence connecting these two events, all took place three thousand miles from Long Island, New York. It cannot even be said that the duty of due care owed by defendants to plaintiffs arose in New York, for that duty did not finally arise until plaintiffs boarded defendants' bus in Las Vegas. We are referred to no appellate court cases, nor has our own research disclosed any, which uphold jurisdiction over a personal injury claim on anything like such slender grounds. Compare Singer v. Walker, 21 A.D.2d 285, 250 N.Y.S.2d 216 (1964); Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961).
 
 
 19
 Plaintiffs' claim for breach of the contract of safe carriage stands on slightly firmer ground for such a claim may ordinarily be pleaded as an independent cause of action under New York law. Kilberg v. Northeast Airlines, Inc., 9 N.Y.2d 34, 38, 211 N.Y.S.2d 133, 135, 172 N.E.2d 526 (1961). Furthermore, it could be argued that jurisdiction over the typical cause of action based upon a bilateral contract may be grounded solely on the fact that the promises of the plaintiff, a resident of the forum state, and his performance pursuant thereto, both took place within the forum state. Cf. McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).
 
 
 20
 This is not a typical contract action, however, for as Judge Dooling noted:
 
 
 21
 'The gist of the claims is tort; the tickets do no more than evidence the relation of common carrier and passenger for hire; it is the law of torts that imposes the standard of care and responsibility appropriate to the carrier-passenger relationship, but that standard, and any consequent liability, are not creatures of contract. Cf. Loehr v. East Side Omnibus Corp., 259 App.Div. 200, 18 N.Y.S.2d 529 (1940), aff'd, 287 N.Y. 670, 39 N.E.2d 290 (1941).'
 
 
 22
 If New York may not assume jurisdiction over the tort claims which are the gist of this suit, it may not take jurisdiction over the contract claims which are derived therefrom. This result is particularly appropriate in the present case, for the promises of 'safe carriage' allegedly breached by defendants, like the duty of due care, are creations of the law implicit in the parties' relationship to each other rather than express undertakings they negotiated.
 
 
 23
 Plaintiffs do not contend that, under 301, defendants are doing business in New York through Herren-Rogers. Past decisions, involving considerably closer contacts with the state through local travel agents, preclude any such assertion. Miller v. Surf Properties, Inc., supra; MacInnes v. Fontainebleau Hotel Corp., supra. Plaintiffs' attempt to distinguish these cases in another connection on the ground that they did not involve direct payments to the agent within the state, is unavailing. Gertsenstein v. Peninsular & Oriental Steam Nav. Co., 202 Misc. 838, 113 N.Y.S.2d 360 (Sup.Ct.1952), aff'd, 204 Misc. 459, 126 N.Y.S.2d 439 (App.T. 1953); Greek Tourist Agency v. Hellenic Mediterranean Lines Co., 199 F.Supp. 6 (S.D.N.Y.1961).
 
 
 24
 Lastly, plaintiffs contend that jurisdiction under 301 or 302 may be based upon the activities conducted for the benefit of defendants by Herbert J. DeGraff. The affidavit of plaintiffs' counsel alleges that from an office in New York City DeGraff distributes brochures and sells tickets for Gray Line tours, including those of defendants, in the same way as does Herren-Rogers. It also points out that the Gray Line, of which defendants are members, represents in its tariff that it has a sales office in New York City at DeGraff's address, and that DeGraff is its 'Regional Vice President-- Sales Eastern Division.' Finally, the affidavit draws attention to the fact that the Gray Line is listed in the New York City telephone directory, and that its name appears on the building directory of the building in which DeGraff's office is located, on one of the doors leading to DeGraff's office, and on the letterhead of certain correspondence emanating from DeGraff's office.
 
 
 25
 The affidavit of DeGraff, submitted by defendants, makes no mention of ticket sales for Gray Line members, but acknowledges that for a fixed annual fee he publicizes Gray Line tours among independent travel bureaus in the East and helps to arrange group tours on Gray Line facilities. He asserts that he performs similar services at fixed annual fees for numerous other companies in the travel business, and that the Gray Line telephone number is shared by all the other companies he represents. He claims that his official Gray Line title is merely a public relations device, used in connection with his work for other companies as well. Finally, his affidavit alleges that he staffs, maintains, operates, and pays for his office himself, independently of the Gray Line or any other travel enterprise.
 
 
 26
 Plaintiffs contend that, under 302, their cause of action arose out of the business transacted in New York by DeGraff on behalf of defendants, because one of DeGraff's activities is to encourage travel bureaus like Herren-Rogers to sell Gray Line tours. We assume for the sake of the argument that this activity constitutes the transaction of business in New York, but, even so, if plaintiffs' cause of action could not arise out of the sale of the tickets, as we have held above, a fortiori it could not arise out of the publicity which may conceivably have contributed to that sale.
 
 
 27
 Plaintiffs also contend that, under 301, defendants are doing business in New York through DeGraff. We agree that DeGraff may perform a wider variety of services for the benefit of defendants than the mere solicitation and facilitation of individual sales, which was about all that was involved in Miller v. Surf Properties, Inc., supra, and MacInnes v. Fontainebleau Hotel Corp., supra, which were cases where jurisdiction was found wanting. On the other hand, the formal connection between DeGraff and defendants would appear not nearly as close as the employer-employee relationship which prevailed in Barnett v. Texas & Pac. Ry. Co., 145 F.2d 800 (2 Cir. 1944), where jurisdiction was upheld. See also Elish v. St. Louis South-western Ry. Co., 305 N.Y. 267, 112 N.E.2d 842 (1953). Thus, the present case may fall between the leading authorities, pro and con, concerning jurisdiction over foreign travel corporations.
 
 
 28
 When close questions of jurisdiction arise, each case must be decided on its own facts. Blount v. Peerless Chems. (P.R.) Inc., supra, 316 F.2d at 697; MacInnes v. Fontainebleau Hotel Corp., supra, 257 F.2d at 833. Unfortunately, the facts set forth in defendants' affidavits relating to this branch of the case are somewhat sketchy. Indeed, their affidavits were characterized by the district court, not only as 'most unimpressive,' but also as 'hardly very frank.' While we are reluctant to impose additional burdens on an already overloaded trial bench, we conclude that this case should be remanded to the district court for a hearing on the question of whether defendants are doing business in New York under 301. Hopefully, the hearing will make clear the full scope and importance of DeGraff's activities on behalf of defendants and the closeness of the relationship between DeGraff and defendants through the Gray Line of which defendants are members.
 
 
 29
 Reversed and remanded for further proceedings in accord with this opinion.
 
 
 30
 MOORE, Circuit Judge (concurring in the result).
 
 
 31
 I concur in the result only because in practically every jurisdictional case the correct legal answer is best obtained from the fullest possible development of the facts. I do not join in the assumption of my colleagues that DeGraff's public relations activities for Gray Line would or could justify a holding that these operating defendants, merely members of the Gray Line association, were transacting business in New York. Such an activity would be far less a 'holding out' than the situations in the Surf Properties, supra, or Fontainebleau Hotel, supra, cases. Furthermore, DeGraff must be shown in my opinion to have been actively engaged in the type of business on behalf of these particular defendants which would result in jurisdictional consequences for them within the principles of the New York law so well analyzed and stated in Judge Waterman's opinion. I am not opposed to further development of the facts but I am not prepared to intimate (and I do not believe that my colleagues do) that Judge Dooling's views of the New York law were inaccurate or unsound.
 
 
 
 [1]
 New York law on this question is not yet entirely clear. In Simonson v. International Bank, 14 N.Y.2d 281, 290, 251 N.Y.S.2d 433, 440, 200 N.E.2d 427, 432 (1964), the Court of Appeals declared:
 'With the possible exception of cases in which the acts serving as the predicate for jurisdiction under the new section are shown to have been carried out in justifiable reliance on the prior law * * *, CPLR 302 has retroactive effect to the extent of embracing suits instituted after its effective date but based on previously accrued causes of action.'
 The New York courts have yet to inform us whether the 'exception' mentioned by the Court of Appeals is actual rather than merely 'possible,' and, if so, what constitutes an act 'carried out in justifiable reliance on the prior law.'