Elizabeth WILCOX, Plaintiff,

v.

PENNSYLVANIA RAILROAD COMPA-
NY, Richmond, Fredericksburg and Po-
tomac Railroad Company and Seaboard
Air Line Railroad Company, jointly and
severally, Defendants.

No. 65 Civ. 2690.

United States District Court
S. D. New York.

Jan. 4, 1967.

I. Arnold Ross, New York City, for plaintiff.

William M. Kimball, Burlingham, Underwood, Barron, Wright & White, New York City, for defendant Richmond.

CANNELLA, District Judge.

Defendant's [1] motion, pursuant to Fed. R.Civ.P. 12(b) [2] to (1) dismiss the amended complaint; (2) quash the supplemental summons and amended complaint herein served upon it; and (3) to quash the return of service of process upon it, is granted in all respects.

The facts of this case are uncomplicated and generally not in dispute. Plaintiff purchased carriage from the Pennsylvania Railroad Company [hereinafter referred to as "Pennsylvania"] for a journey from New York City, New York to Savannah, Georgia aboard the Silver Meteor. The train was scheduled

---

1. This motion is made exclusively on behalf of the Richmond, Fredericksburg and Potomac Railroad Company and any reference to "defendant" is restricted to the moving defendant.

2. Fed.R.Civ.P. 12(b) provides, inter alia, that objections to the court's jurisdiction, at the option of the pleader, may be made by motion.

to depart from Pennsylvania Station in New York City on August 29, 1964.

The ticket which the plaintiff purchased, called a "coupon ticket" consisted of three detachable parts. The first segment of the ticket was good for transportation over the tracks of the Pennsylvania from New York City to Washington, D. C.; the second portion for passage over the tracks of the Richmond, Fredericksburg and Potomac Railroad Company [hereinafter referred to as the "Richmond"] from Washington, D. C. to Richmond, Virginia. The third portion of the ticket was good for passage over the tracks of the Seaboard Air Line Company [hereinafter referred to as the "Seaboard"] from Richmond, Virginia to Savannah, Georgia.

Although scheduled to depart from New York at 2:50 p. m., the Silver Meteor in fact, did not leave until approximately two and one-half hours later, arriving in Washington, D. C. at approximately 9:30 p. m. Thereafter, the Richmond took control of the Silver Meteor and remained in possession until approximately 11:59 p. m., at which time the Seaboard took possession of the train.

At some undetermined time during the evening of the 29th,[3] the injury which is the foundation for this lawsuit was sustained by the plaintiff. It is alleged by the plaintiff that she entered the ladies room in the passenger car in which she was riding. Thereafter, as a result of a negligent, violent jerking of the train, she was thrown against a wash basin, causing her to strike her spine, fall to the floor and incur serious personal injury.

It is not known precisely at what point in her journey the plaintiff sustained her alleged injury. More specifically, it is not known upon whose tracks the injury was sustained. In light of the eventual disposition of this motion, however, this court will assume, for the limited purpose of this motion, that the injury was incurred while the train was on the tracks of the Richmond.

■■ Properly,[4] the plaintiff has invoked New York's "single act" statute [5] to obtain in personam jurisdiction over Richmond.

In the first instance, the plaintiff attempts to ground in personam jurisdiction over this defendant by way of invocation of subsection 1 of the single act

3. In the defendant's examination before trial of the plaintiff, Mrs. Wilcox established the time of the accident as being about a half hour after pillows were sold to the passengers of her car. This was the nearest she could come to fixing a definite time for the occurrence of the accident.

4. "In the absence of a federal statute or rule enlarging the jurisdiction of federal courts, the amenability of a foreign corporation to suit in a diversity case is governed by the constitutionally valid law of the state in which the federal court sits. Arrowsmith v. United Press Int'l, 320 F.2d 219 [6 A.L.R.3d 1072] (2 Cir. 1963)." Gelfand v. Tanner Motor Tours, Ltd., 339 F.2d 317, 319 (2 Cir. 1964).

5. CPLR 302(a): Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state; or
2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
  (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
  (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
4. owns, uses or possesses any real property situated within the state. As amended L.1966, c. 590, eff. Sept. 1, 1966.

statute, i. e., a cause of action arising out of business transacted within New York.

■ It is doubtful to this court whether this defendant could properly be found to have transacted business within this state sufficient to come within the ambit of CPLR 302(a) (1). Considering the activities of the defendant in New York [6] in light of the recent decisions of this circuit [7] and the courts of the state of New York, [8] no other reasonable conclusion could be reached. As one noted commentator on this subject has written, "it has been perfectly clear since Feathers v. McLucus, 1965, 15 N.Y.2d 443 [261 N.Y.S.2d 8, 209 N.E.2d 68] * * * that the 'tortious act' provision of the long-arm statute would not be construed to occupy the entire field of jurisdiction permitted under modern constitutional doctrines. It is becoming equally clear, despite occasional intimation to the contrary (cf. Pallas v. Driv-Rite, Inc., D.C.N.Y.1966, 252 F. Supp. 582) that the 'transaction of business' provision will likewise be limited. In the quest for the 'purposeful activity' by the defendant which the Court of Appeals mandated in its Longines opinion of last year * * * the courts have been applying a relatively stringent test." [9] This test has not been met by the plaintiff.

The recent case of Bryant v. Finnish Nat'l Airlines, 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965), upon which the plaintiff has placed great reliance, is not helpful to the plaintiff for it is readily distinguishable from the instant case. In the Bryant case the non-resident defendant's contacts with this state, among many others, included a one-and-a-half room office in its own name staffed with three full time and four part time employees. Even these minimum, but fundamental, contacts were not present here, however.

Assuming arguendo that the sale of a ticket to the plaintiff by Pennsylvania was a sufficient transaction of business in New York by Richmond, it is still incumbent upon the plaintiff, in order to successfully invoke CPLR 302(a) (1), to prove that the cause of action upon which the suit is based arose from the transaction found to have occurred in New York. This the plaintiff has not done and, indeed, could not do.

In this case the alleged negligence of the defendant, the subsequent injury to the plaintiff and every relevant occurrence connecting these two events all took place outside of New York. As this circuit has noted in a similar case, "[i]t cannot even be said that the duty of due care owed by [defendant] to [plaintiff] arose in New York, for that duty did not finally arise until [plaintiff] boarded [defendants'] [train] in [Washington, D.C.]". [10]

Thus, for the foregoing reasons, the plaintiff's reliance on CPLR 302(a) (1) is ineffectual to bring this defendant within the jurisdiction of the New York courts.

---

6. Richmond's principal contact with this state is that it owns railroad cars which from time to time are brought into New York while in the management and control of interstate trains being operated by other railroad companies. Richmond does not, among other things, have an office or place of business in New York; officers or directors who reside in New York; a mailing address or a telephone listing in New York; own, manage or control any real property in New York; or have a bank account or similar tangible assets in New York.

7. Agrashell, Inc. v. Sirotta Co., 344 F.2d 583 (2 Cir. 1965); Boryk v. de Havilland Aircraft Co., 341 F.2d 666 (2 Cir. 1965); Gelfand v. Tanner Motor Tours, Ltd., 339 F.2d 317 (2 Cir. 1964).

8. Miller v. Surf Properties, Inc., 4 N.Y. 2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958).

9. McLaughlin; The 1966 Supplementary Practice Commentary to CPLR 302 Book 7B; McKinney's Consolidated Laws of New York Annotated; §§ 1–500.

10. Gelfand v. Tanner Motor Tours, Ltd., 339 F.2d 317, 321–322 (2 Cir. 1964).

The plaintiff's reliance on subsection 3 of the single-act statute [11] is similarly misplaced. Beyond a peradventure, fundamental to the application of this section is the presence of an injury which was incurred within the State of New York. Although, as noted above, there is uncertainty as to precisely where the accident òccurred vis-a-vis the physical location of the Silver Meteor, it is conceded that the injury did occur outside the limits of the State of New York. Thus, this basis for New York jurisdiction must also be denied.

So ordered.