GERARD F. MCGOWAN, Individually and as Parent and Natural Guardian of GERARD A. MCGOWAN, an Infant, Respondent, v ELTON SMITH et al., Respondents.

ADAM, MELDRUM & ANDERSON CO., INC., Third-Party Plaintiff-Respondent, v FREDERICK ATKINS, INC., Third-Party Defendant-Respondent, and MOGI TRADING COMPANY, Third-Party Defendant-Appellant.

Fourth Department, December 21, 1979

### APPEARANCES OF COUNSEL

*Brown, Kelly, Turner, Hassett & Leach (Andrew D. Merrick* of counsel), for appellant.

*Cox, Barrell, Walsh, Roberts & Grace (Gerald Grace, Jr.,* of counsel), for Elton Smith and another, respondents.

*Hurwitz & Fine, P. C. (James Gauthier* of counsel), for Adam, Meldrum & Anderson Co., Inc., respondent.

### OPINION OF THE COURT

DOERR, J.

This case calls for yet another interpretation of CPLR 302, New York's "long arm" statute dealing with personal jurisdiction over nondomiciliary defendants.

On July 28, 1971 Gerard Anthony McGowan, a resident of the State of New York and the son of plaintiff, was visiting the temporary summer residence of defendants Elton and Jill Smith in Point Abino, Ontario. During this visit a fondue pot owned by the Smiths, being using in the preparation of dinner, exploded causing serious burns to Gerard Anthony McGowan, giving rise to this cause of action for negligence, breach of warranty and strict liability.

Mrs. Smith had purchased the fondue pot from defendant and third-party plaintiff Adam, Meldrum and Anderson Co., Inc. ("AM&A") at its department store in Buffalo, New York. AM&A is one of 25 member stores for whom first third-party defendant Frederick Atkins, Inc. "(Atkins") is a corporate buying office. AM&A owns stock in Atkins and at least one of its directors or officers is an officer or director of Atkins. The

member stores periodically send a committee to the Orient to procure merchandise in large quantities and thereby obtain a better price. This is done under the aegis of Atkins.

In January, 1969 Atkins held a meeting of the member stores in Chicago, Illinois where it was decided that a fondue pot would be a "target item" for the stores in a forthcoming trip of the committee to Japan. As a result, over 7,000 pots of the type allegedly causing the injuries complained of were purchased from the second third-party defendant Mogi Trading Company ("Mogi"), of which approximately 500 were purchased by AM&A. Allegedly it is one of these pots which caused the injury to the infant.

Mogi is a Japanese corporation with its principal place of business in that country. Its business is exporting merchandise manufactured in Japan, and it does not itself manufacture any products. It is not licensed or authorized to do business in New York and does not have any sales personnel or other agent employed here. It has no property, bank account or office in New York and there is no indication in the record that it directly solicits any business in New York State. Its gross sales for the years 1969 and 1970 were very substantial with about 75 percent of its sales attributed to the United States market. Generally, negotiations concerning sales to the United States take place in Japan.

Representatives from Mogi attend an annual housewares show in New York City, as well as a similar show in Chicago. As overseas guests they are not permitted to bring samples to the shows and do not take orders there. Their attendance is simply to gain knowledge of what items should be prepared for export. It is conceded that attendance at these shows has brought "some good results" for Mogi.

In addition to exports through Atkins, Mogi has sold goods to one other independent importer in New York and to the New York office of F. W. Woolworth Company. As in the case of Atkins, it appears these orders were placed directly in Japan. There is no evidence that business negotiations were conducted between Mogi and Atkins or with any other customers in New York State.

Mogi was served in Nagoya, Japan, by registered mail. No service was made in the State of New York. In his second amended complaint, plaintiff asserts that in personam jurisdiction exists over Mogi because it transacts business in the State of New York (CPLR 302, subd [a], par 1).

■ ■ Plaintiff also relies on that portion of the "long arm" statute conferring personal jurisdiction over a nondomiciliary who:

"commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

"(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

"(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce" (CPLR 302, subd [a], par 3).

Mogi subsequently moved to dismiss the complaint or in the alternative, for summary judgment, claiming that New York lacked in personam jurisdiction over it. This motion was denied. We reverse.

The question of whether a State may exercise personal jurisdiction over a nondomiciliary involves due process considerations. *Pennoyer v Neff* (95 US 714) spelled out an uncomplicated rule that jurisdictional due process could be satisfied only if the defendant made an appearance or was personally served within the forum State. In *International Shoe Co. v Washington* (326 US 310, 316) this rigid test was significantly modified where the Supreme Court observed that "due process requires only that in order to subject a defendant to a judgment *in personam,* if he not be present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice' [citations omitted]." The court pointed out that a corporation's presence within the forum is required and that this presence can be manifested only by activities carried on in its behalf by those who are authorized to act for it. This is not to say that in each case "presence" requires that the nondomiciliary be physically found within the forum. The *International Shoe Co.* court observed that when corporate activities are continuous and systematic and give rise to the liabilities sued upon in the forum State, it is present there and that while casual presence or the conduct of single or isolated items of activity may not be enough to fix jurisdiction, some single or occasional acts, because of their nature and quality and the circumstances of

their commission, may be deemed sufficient. The *International Shoe Co.* rule underwent certain refinements in *Hanson v Denckla* (357 US 235, 253) where the court wrote: "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws [citations omitted]".

There is no fixed standard to measure the minimum contacts required to sustain jurisdiction. Thus, even though a business relationship between two parties may have existed and been pursued over a significant period of time, that alone will not subject the nondomiciliary to the jurisdiction of the forum State *(McKee Elec. Co. v Rauland-Borg Corp.,* 20 NY2d 377; *Katz & Son Billiard Prods. v Correale & Sons,* 26 AD2d 52, affd 20 NY2d 903; *Rainbow Inds. Prods. v Haybuster Mfg.,* 419 F Supp 543). On the other hand, whether or not a defendant was physically present in the forum State, one act can be sufficient to satisfy the jurisdictional requirement of transacting business so long as that act is sufficiently purposeful and points toward invoking the benefits and protections of the laws of the forum State *(McGee v International Life Ins. Co.,* 355 US 220; *Reiner & Co. v Schwartz,* 41 NY2d 648; *Parke-Bernet Galleries v Franklyn,* 26 NY2d 13). CPLR 302 is "a single-act statute requiring but one transaction—albeit a purposeful transaction—to confer jurisdiction in New York" *(Parke-Bernet Galleries v Franklyn, supra,* p 17).

Similarly, the mere shipment of goods into New York, however substantial, without more, will not confer personal jurisdiction over a nondomiciliary defendant *(Delagi v Volkswagenwerk AG of Wolfsburg, Germany,* 29 NY2d 426; *McKee Elec. Co. v Rauland-Borg Corp., supra; Kramer v Vogl,* 17 NY2d 27; *Parker v Green,* 63 AD2d 977), nor will shipment out of New York suffice *(Aero-Bocker Knitting Mills v Allied Fabrics Corp.,* 54 AD2d 647; *Katz & Son Billiard Prods. v Correale & Sons, supra).* "While place of contract may be a factor to be considered in determining whether the claim arose from a transaction of business within New York State, it is insufficient to confer jurisdiction [citations omitted]." *(Aero-Bocker Knitting Mills v Allied Fabrics Corp., supra,* p 648.)

The activities of the defendant within the forum State must be examined to determine whether these activities are purposeful ones which meet the test of "minimum contacts." While physical presence of a foreign defendant is not required under CPLR 302 (subd [a], par 1), with few exceptions jurisdiction has not been upheld without it.*

■ With these principles in mind, plaintiff and AM&A, the third-party plaintiff, clearly have failed to establish any personal jurisdiction over Mogi. Mogi's connection with New York has been limited to attendance at an annual housewares show in New York City as an overseas guest. Although these visits might have been to its ultimate benefit, they were "casual and insubstantial" *(Chemical Bank v World Hockey Assn.,* 403 F Supp 1374). Furthermore, there has been no showing that Mogi's activities at these brief and sporadic visits to New York, if they can be characterized as activities, gave rise in any way to the cause of action in this case. For jurisdiction to attach under CPLR 302 (subd [a], par 1), it must be shown not only that a defendant has performed an act in New York, but also that the cause of action arose from that act.

■ The attempt to obtain jurisdiction over Mogi under the provisions of CPLR 302 (subd [a], par 3) on the ground that it committed a tortious act without the State causing injury to a person within the State must likewise fail. The acknowledged purpose for the addition of this provision to CPLR 302 was to remedy an inequity in the statute which became evident when *Feathers v McLucas* (15 NY2d 443, 458-464) was decided. The new provision was drawn with care and precision, with a view toward staying within constitutional due process limits (1 Weinstein-Korn-Miller, NY Civ Prac, par 302.14). "Under the 1966 amendment which added CPLR 302 (a)(3), jurisdiction may be asserted over a non-domiciliary whose out-of-state acts result in injury in New York when certain additional contacts are present. In the quest for these additional contacts, however, a court should never lose sight of the most essential condition, viz., there must be an injury in New York." (McLaughlin, Practice Commentaries, McKinney's Cons Laws of

---

* A recent amendment to CPLR 302 (subd [a], par 1) may cast some doubt on the future application of these principles. Chapter 252 of the Laws of 1979 effective September 1, 1979, amended paragraph 1 of subdivision (a) as follows: "Transacts any business within the state or contracts anywhere to supply goods or services in the state".

NY, Book 7B, CPLR, C302:20, p 87.) Thus, for example, foreseeability is not reached if there is no injury in New York (*American Eutectic Welding Alloys Sales Co. v Dytron Alloys Corp.,* 439 F2d 428).

While CPLR 302 (subd [a], par 3) grew out of the *Feathers* decision, *(supra),* a personal injury and property damage action, nothing in the statute prohibits its use in economic tort cases (e.g., *Chemical Bank v World Hockey Assn., supra; American Eutectic Welding Alloys Sales Co. v Dytron Alloys Corp., supra; Spectacular Promotions v Radio Station Wing,* 272 F Supp 734). However, barring some other purposeful activity in New York upon which to predicate jurisdiction, these cases all require that the injury resulting from an out-of-State tort occurs in New York in order to sustain jurisdiction *(Sybron Corp. v Wetzel,* 61 AD2d 697, mod 46 NY2d 197). The same holds true in personal injury cases. In *Wilcox v Pennsylvania R. R. Co.* (269 F Supp 326), plaintiff, a New York resident, purchased a railroad ticket in New York to travel to Savannah, Georgia. After the train left New York she suffered personal injuries. The court wrote: "The plaintiff's reliance on subsection 3 of the single-act statute [CPLR 302] is similarly misplaced. Beyond a peradventure, fundamental to the application of this section is the presence of an injury which was incurred within the State of New York." In *Kramer v Hotel Los Monteros S. A.* (57 AD2d 756) plaintiff while a guest at defendant's hotel in Spain was bitten by a dog. Upon his return to the United States he developed a severe infection from the dog bite. The court held that CPLR 302 (subd [a], par 3) was inapplicable because that section looks to the injury occurring within the State of New York, not the resultant damage. "To hold otherwise would open a veritable Pandora's box of litigation subjecting every conceivable prospective defendant involved in an accident with a New York domiciliary to defend actions brought against them in the State of New York [citations omitted]" *(Kramer v Hotel Los Monteros S. A., supra,* p 757). In *Vamosy v Gateway Ins. Co.* (49 AD2d 489) a cause of action for economic tort in the issuance of an insurance policy in New Jersey, with overtones of personal injury and property damage in New York because of an automobile accident, the court wrote: "Paragraph 3 of subdivision (a) of CPLR 302 requires that a tortious act committed by a non-domiciliary without the State cause 'injury to person or property within the state' before a court may exercise personal

jurisdiction over the nondomiciliary" *(Vamosy v Gateway Ins. Co., supra,* 491). It was there held that the tort which occurred was the failure to provide insurance and that act took place in New Jersey. The principle enunciated, however, is consistent with the general application of CPLR 302 (subd [a], par 3) followed in all court decisions on the subject. *Black v Oberle Rentals* (55 Misc 2d 398) is consistently cited with approval by the Federal courts and appellate courts of this State. There, the third-party defendant, an Indiana corporation, manufactured automotive parts which were sold in New York. Plaintiff suffered personal injuries as a result of an automobile accident in Massachusetts. The court held that a tortious act outside the State causing physical injury to a New York resident outside the State does not meet the minimum-contact prerequisite for the State to exercise its power over a nondomiciliary defendant.

While the infant McGowan's visit to the Province of Ontario where he suffered his injuries was fortuitous, he nonetheless was not in the State of New York when the injury occurred. Under those circumstances, jurisdiction over Mogi cannot be sustained by virtue of CPLR 302 (subd [a], par 3, cls [i], [ii]). An injury does not occur in New York simply because the plaintiff is domiciled here.

For these reasons, the order should be reversed, the motion granted and the complaints dismissed.

SIMONS, J. P., HANCOCK, JR., SCHNEPP and WITMER, JJ., concur.

Order unanimously reversed, with costs, motion granted and complaints dismissed.