**Cesario M. APOLINARIO and Valentin Smrekar, Administrator of the Estate of Miro W. Smrekar**

v.

**AVCO CORPORATION and Aerospatiale Helicopter Corporation.**

**Civ. No. H–81–133.**

United States District Court,
D. Connecticut.

June 30, 1982.

George D. Royster, Jr., Halloran, Sage, Phelon & Hagarty, Hartford, Conn., for plaintiffs.

Allan B. Taylor, and Philip S. Walker, Day, Berry & Howard, Hartford, Conn., Edward W. Dunham, and Shaun Sullivan, Wiggin & Dana, New Haven, Conn., for defendants.

## RULING ON DEFENDANT AEROSPAT-IALE HELICOPTER CORPORATION'S MOTION TO DISMISS

BLUMENFELD, Senior District Judge.

This law suit by two Canadian citizens seeks damages sustained as a result of a crash of a helicopter into the frozen surface of Heaven Lake, Ontario during a flight from Edmonton to Montreal. Plaintiff Apolinario, the pilot of the helicopter, seeks damages for personal injuries he sustained, and plaintiff Valentin Smrekar sues as Administrator of the estate of his son Miro W. Smrekar, the engineer aboard the aircraft who died in the crash. Together they constituted a crew employed by Canadian Helicopters, Ltd., a Canadian corporation with an office in Calgary, Alberta, to operate the ship for its owner Associated Helicopters Co., Ltd., another Canadian corporation of Edmonton, Alberta. The plaintiffs sue Aerospatiale Helicopter Corporation (AHC), the distributor of the aircraft, and Avco Corporation (Avco), the manufacturer of the helicopter's engine, on product liability theories. Both defendants have moved to dismiss pursuant to Rule 12. AHC's motion is based on lack of jurisdiction, improper venue and *forum non conveniens*. Avco's motion alleges improper venue and *forum non conveniens*. This ruling deals only with AHC's motion.

A brief description of the circumstances out of which these claims arise is essential to an analysis and disposition of the issues raised by these motions.

### Facts

The subject helicopter, a model AS 350–C ASTAR bearing factory serial number 1014 and Canadian registration C–GBVS, was manufactured in France by a French corporation, Societe National Industrielle Aerospatiale (SNIA). SNIA purchased the aircraft's original engine, serial number 43012, from Avco's Lycoming Division located in Connecticut, and incorporated it into the helicopter in France. SNIA also test flew and inspected the aircraft in France, and then sold it to AHC on May 7, 1978. AHC, a Delaware corporation with a principal place of business in Grand Prairie, Texas, is a subsidiary of SNIA and the North American distributor of SNIA helicopters. After AHC purchased the aircraft, it was disassembled in France and shipped to Texas, where it was reassembled and once again inspected and test flown. Pursuant to a contract executed in Texas on May 30, 1978, AHC sold the helicopter to Bow Helicopters Ltd. (Bow), a Canadian corporation with offices in Calgary, Alberta. Bow took physical delivery of the helicopter at AHC's headquarters in Texas on July 2, 1978.

Sometime after Bow took possession of the aircraft, it removed the original engine, number 43012, and replaced it with a second engine manufactured by Avco bearing serial number 43026. It was this engine, number 43026, which failed and allegedly caused the crash out of which this suit arises. The history of engine number 43026 is, therefore, of crucial importance.

As part of the consideration for the purchase of an ASTAR 350 helicopter from AHC, the customer receives a warranty of 600 hours on the engine. The warranty runs directly from Avco, the manufacturer of the engine, to the customer. If an engine malfunctions and must be replaced during the warranty period, the customer enters into a "warranty exchange" with Avco, whereby a replacement engine is sold with an appropriate adjustment in the purchase price depending on the number of hours of operation on the original engine being replaced.

Engine number 43026 had originally been sold and shipped to AHC in France on or about March 31, 1978 and incorporated into an ASTAR 350 airframe not involved in this accident. This craft was then shipped to Texas and, after final manufacturing and testing, was sold by AHC to Petroleum Helicopters, Inc. After 29 hours of opera-

tion, engine number 43026 was removed from this aircraft and, on or about March 2, 1979, was shipped back to Avco in Stratford, Connecticut, pursuant to a "warranty exchange" because of some problem or malfunction of the engine. This engine remained at Avco from approximately March 7, 1979 to July 17, 1979, during which time it underwent "general updating" at the Avco plant in Connecticut. Engine number 43026 was shipped to Bow on or about July 17, 1979 and subsequently installed in the ASTAR helicopter which was involved in the accident at issue in this litigation. At the time engine number 43026 was exported to Bow in Canada it was certified by the F.A.A. as airworthy and as not requiring overhaul until 2,400 hours of operation.

On October 31, 1979 the helicopter involved in this litigation was sold by Bow to Alberta Ltd., which in turn sold it to Associated Helicopters on November 1, 1979. The crash occurred on January 26, 1980, after only 288 hours of operation of engine number 43026 (since new) and after 887 hours of operation of the airframe.

The crash was allegedly caused by engine failure resulting from a fatigue fracture of a blade of the compressor module. The fractured blade was ingested into the engine resulting in further damage to and eventual failure of the engine. The plaintiff Apolinario alleges that he did not become immediately aware of this problem for two reasons. The ASTAR 350 aircraft is not equipped with instrumentation to warn a pilot of loss of engine RPM or engine failure. Further, the "airspeed indicator" (comparable to a speedometer of a car) of the craft had malfunctioned, apparently due to the freezing of the "pitot tube," and thus the pilot was not immediately made aware of the loss of airspeed due to engine failure. When he finally did become aware of the failure, the airspeed had decreased to such an extent that a safe landing, utilizing the technique of "autorotation," was not possible.

The claims against both defendants are based on product liability theories. The claim against Avco relates to the failure to

adequately design, manufacture, test and inspect engine number 43026 and the LTS–101 type engine in general, such that it would result in total failure of the engine after only 288 hours of operation. The claim against AHC relates to design failures of the airspeed indicator (the "pitot tube" in particular) and the failure to include a "tachometer" type instrument to warn a pilot of loss of engine RPM. It is claimed that this resulted in the inability of the pilot to timely perform a successful autorotation descent.

Plaintiffs claim in their complaint that the accident

> and the personal injuries sustained were caused by either the negligence and carelessness of one or both of the defendants; or by their breach of warranties, either expressed or implied; or their failure to discharge a duty to warn or inspect; or their non-disclosure of information which would have been important to the safe operation of this aircraft; or by their strict liability under Public Act 79–483 of the Connecticut General Assembly.

The plaintiffs claim jurisdiction over AHC pursuant to section 33–411(b) of the Connecticut General Statutes, which provides in pertinent part:

> Every foreign corporation which transacts business in this state in violation of ... Section 33–396 shall be subject to suit in this state upon any cause of action arising out of such business.

Conn.Gen.Stat. § 33–411(b). Section 33–396 requires any foreign corporation which transacts business in this state to file a certificate of authority with the Secretary of State. The filing of such a certificate of authority makes a foreign corporation amenable to suit in this state under section 33–411(a). AHC admittedly has not filed such a certificate. Where no such certificate has been filed by a corporation required to do so by section 33–396, the sanction provided by section 33–412 is to bar it from access to any court of this state. *See Armor Bronze & Silver Co. v. Chittick*, 221 F.Supp. 505, 510 (D.Conn.1963).

It is well settled that a federal district court sitting in a diversity case must look to state law to determine whether it may exercise jurisdiction over foreign corporations. *Arrowsmith v. United Press International,* 320 F.2d 219 (2d Cir.1963) (en banc); *Marvel Products, Inc. v. Fantastics, Inc.,* 296 F.Supp. 783, 785 (D.Conn.1968).

Since *Arrowsmith,* the federal courts in this district have applied "a two-tiered consideration of (1) whether the appropriate state statute reaches the foreign corporation and (2) whether such statutory reach exceeds the constitutional 'minimum contacts' test required by due process." *McFaddin v. National Executive Search, Inc.,* 354 F.Supp. 1166, 1168 (D.Conn.1973). *See also Marvel Products, Inc. v. Fantastics, Inc.,* 296 F.Supp. 783 (D.Conn.1968); *Electric Regulator Corp. v. Sterling Extruder Corp.,* 280 F.Supp. 550, 554 (D.Conn.1968).

### Subject Matter Jurisdiction Under Conn.Gen.Stat. § 33–411(b)

AHC's challenge to the exercise of jurisdiction over it has been clearly circumscribed in the first of two stages of the analysis which must be made:

Whether or not AHC has transacted business in Connecticut, it is clear that plaintiffs cannot satisfy the fundamental requirement of § 411(b), for they have not stated—and *could* not state, in light of the facts—any cause of action "arising out of such business."

Defendant's Memorandum in Support of Its Motion to Dismiss the Complaint at 7 (footnote omitted, emphasis in original).

The plaintiffs argue strenuously that the "arising out of" language of section 33–411(b) does not mandate a direct relationship between the cause of action and the business transacted in this state. All that is required for the existence of jurisdiction, they contend, is "whether AHC's extensive contacts with the State of Connecticut meet the necessary nexus requirements to confer jurisdiction upon this court." As authority for that proposition they cite Judge Zampano's remark in *Chemical Specialities Sales Corp. v. Basic, Inc.,* 296 F.Supp. 1106 (D.Conn.1968):

The Court is convinced that the defendant's activities in this state directly relate to the plaintiff's causes of action and provide the necessary nexus between the defendant and Connecticut to sustain the extraterritorial service of process within the provisions of the Connecticut "long arm" statute.

296 F.Supp. 1106, 1109–10. That case, however, did not involve a diversity suit, and Judge Zampano's decision did not purport to construe the meaning of "arising out of such business"[1] in the governing statute, section 33–411(b). It is important to keep separate the two factors upon which jurisdiction over a foreign corporation depends.

Analytically, AHC's challenge to jurisdiction is aimed solely at the subject matter element of Connecticut's long-arm statute. With respect to that element, it is as Judge Goodrich stated in *Pulson v. American Rolling Mill Co.,* 170 F.2d 193, 194 (1st Cir.1948), "[t]here is nothing to compel a state to exercise jurisdiction over a foreign corporation unless it chooses to do so, and the extent to which it so chooses is a matter for the law of the state as made by its legislature."

The distinction was noted recently in *Insurance Corporation of Ireland, Ltd. v. Compagnie des Bauxites de Guinea,* 456 U.S. 694, 701, 102 S.Ct. 2099, 2102, 72 L.Ed.2d 492 (1982), "The concepts of subject matter and personal jurisdiction, however, serve different purposes, and these different purposes affect the legal character of the two requirements." Obviously these

---

**1.** *Chemical Specialities Sales Corp. v. Basic, Inc.,* 296 F.Supp. 1106 (D.Conn.1968), was a suit against a corporation under the antitrust laws which may be brought in any district where it may be found, 15 U.S.C. § 22, and under the patent laws for a declaration of invalidity for which jurisdiction is provided by 28 U.S.C. § 1338(b). Subject matter jurisdiction was based on federal law and diversity jurisdiction was not involved. The only issue was whether the method of service through the Secretary of State was sufficient to satisfy the notice requirements of due process.

different aspects of a state's long-arm statutes must not be jumbled together, although they may sometimes be related intelligibly toward each other. Section 33–411(b) within itself requires the presence of two factors to provide the subject matter basis for jurisdiction: "First, the foreign corporation must have transacted business within the state .... Second, the cause of action upon which the foreign corporation is being sued must have arisen from those business transactions." *Electric Regulator Corp. v. Sterling Extruder Corp.,* 280 F.Supp. 550, 554 (D.Conn.1968).[2] *See also McFaddin v. National Executive Search, Inc.,* 354 F.Supp. 1166, 1168 (D.Conn.1973).

The first question, therefore, is not whether there is a nexus between the defendant foreign corporation and Connecticut, but whether the suit is on a "cause of action arising out of such business" transacted "in this state." § 33–411(b).

*The Meaning of "Cause of Action Arising Out of Such Business" in Connecticut's Long-Arm Statute*

No case by Connecticut's courts addressing this question has been brought to the attention of the court. However, the federal court in this district has construed "arising out of such business" in section 33–411(b). In *Bross Utilities Service Corp. v. Aboubshait,* 489 F.Supp. 1366 (D.Conn. 1980), *aff'd without opinion,* 646 F.2d 559 (2d Cir.1980), Judge Cabranes granted a foreign defendant's motion to dismiss, holding that the circumstances did not support jurisdiction under section 33–411(b) (the court "has been afforded no basis to conclude that this lawsuit arises out of any business ... conducted here.") *Id.* at 1371. Also, this court ruled in *Shaw v. American Cyanamid Co.,* 534 F.Supp. 527 (D.Conn. 1982) that "Section 33–411(b) requires that a cause of action in which jurisdiction is asserted over a foreign corporation arise out of the business which the defendant transacted within the state." *Id.* at 530.

Similar statutes in the neighboring states of New York and Massachusetts have been considered by the Courts of Appeal for the circuits in which they are located.

In *Gelfand v. Tanner Motor Tours, Ltd.,* 339 F.2d 317 (2d Cir.1964) a similar statute in New York, N.Y.C.P.L.R. § 302, was first considered. Two New York residents injured when the bus on which they were traveling in Nevada crashed into a rock bank off the highway sued the owners and operators of the bus company. The exercise of jurisdiction was sought under the statute, section 302(a), which provided that a court may exercise jurisdiction over any nondomiciliary as to "a cause of action arising from ... business transacted in the state." The plaintiffs had sued not only the owner and operator of the business, but also the Herren-Rogers Travel Service on Long Island, an independent travel bureau which had received a deposit toward the expense of the trip, made reservations, and forwarded to the other defendants the balance of the cost of the full tour from Las Vegas to Grand Canyon, withholding its commission.

Judge Dooling of the District Court had granted a motion to dismiss for lack of jurisdiction in behalf of all defendants. In holding that the suits did not "arise out of business transacted in New York," Judge Dooling noted:

The gist of the claims is tort; the tickets do no more than evidence the relation of common carrier and passenger for hire; it is the law of torts that imposes the standard of care and responsibility appropriate to the carrier-passenger relationship, but that standard, and any consequent liability, are not creatures of contract. Cf. *Loehr v. East Side Omnibus Corp.,* 259 App.Div. 200, 18 N.Y.S.2d 529 (1940), *aff'd,* 287 N.Y. 670, 39 N.E.2d 290 (1941).

*Gelfand v. Tanner Motor Tours, Ltd.,* 339 F.2d at 322. In upholding the ruling of Judge Dooling to that extent, the Court of Appeals stated:

---

**2.** In *Electric Regulator Corp. v. Sterling Extruder Corp.,* 280 F.Supp. 550, 554 (D.Conn.1968), then Chief Judge Timbers (now Circuit Judge) noted that "it is important to bear in mind that, while some states hold that the term 'transact-

ing business' should be interpreted in the broadest sense constitutionally permissible, Connecticut is not such a state." *See also McFaddin v. National Executive Search, Inc.,* 354 F.Supp. 1166 (D.Conn.1973).

Plaintiffs contend that, under § 302, their cause of action arose out of the business transacted in New York by De-Graff on behalf of defendants, because one of DeGraff's activities is to encourage travel bureaus like Herren-Rogers to sell Gray Line tours. We assume for the sake of the argument that this activity constitutes the transaction of business in New York, but, even so, if plaintiffs' cause of action could not arise out of the sale of the tickets, as we have held above, *a fortiori* it could not arise out of the publicity which may conceivably have contributed to that sale.

*Id.* at 323.

In a more recent case considering the same section 302 in New York, the Court of Appeals in *Fontanetta v. American Board of Internal Medicine*, 421 F.2d 355 (2d Cir. 1970) again upheld a district court's dismissal of a case for lack of jurisdiction. That court found that—as in Connecticut—

> [w]hile there has been much discussion of what amounts to transacting business . . . there has been little analysis of when a cause of action "arises" out of business so transacted.

*Id.* at 357. They quoted from a New York Court of Appeals case involving a plaintiff who had fallen in his room at the London Hilton and sued Hilton Hotels (U.K.) Ltd., a British corporation, in New York, *Frummer v. Hilton Hotels International, Inc.*, 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851, *cert. denied*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 299 (1967), wherein the New York court held that section 302(a)(1) did not apply because

> the plaintiff does not allege that he had any dealings at all with the British corporate defendant or its agents in this State. Therefore, it may not be said that his cause of action *arose* from the British corporation's transaction of any business here . . . .

*Id.* at 536 (emphasis in original). *Accord Wisselman v. Mount Snow, Ltd.*, 524 F.Supp. 78, 79–80 (E.D.N.Y.1981).

In *Singer v. Piaggio*, 420 F.2d 679 (1st Cir.1970), the Court of Appeals of the First Circuit construed a similar provision in the Massachusetts long-arm statute governing personal jurisdiction "as to a cause of action arising from . . . transacting any business in this commonwealth . . . ." *Id.* at 681. In sustaining the dismissal of the plaintiff's case for injuries sustained in Florida based on negligence in the manufacture of a motor scooter manufactured in Italy, which was sold under a franchise agreement to a Massachusetts corporation, the court stated:

> Every relevant event of any importance—the alleged negligence, the sale, the injury—occurred in some other jurisdiction.

*Id.* at 681.

■ In the case at bar there are two distinct theories on which AHC could be found liable for injuries and damage caused by this crash. First, AHC's sale of the airframe to Bow in Texas in 1978 and, second, AHC's sale of the aircraft with a warranty on the engine running from Avco to the customer under which Avco undertook to replace and service the engine in Connecticut. As to the first theory of liability, it is incontrovertible that the airframe itself has absolutely no relationship to Connecticut and, therefore, any liability arising out of AHC's sale of the aircraft itself cannot be said to arise out of business transacted in this state. AHC sold the aircraft in Texas to Bow which later resold it in Canada to Helicopters, Ltd. The aircraft has never been in Connecticut and AHC has had no dealing in Connecticut in relation to this aircraft. Although AHC could be found liable on the theory that it sold an aircraft containing a defective engine, this sale did not take place in Connecticut nor did it have any connection with this state. In addition, the craft sold by AHC which crashed did not contain the engine which is the subject matter of this litigation. When AHC sold that helicopter it contained engine number 43012. This engine was later replaced with engine number 43026 which allegedly caused the crash out of which this litigation developed.

■ AHC's sale of the aircraft with a warranty on the engine running from Avco

to the consumer whereby the consumer can have the engine replaced by Avco also does not constitute the transaction of business in Connecticut by AHC. Although the subsequent servicing of the engine as a result of this warranty occurred in Connecticut, the warranty was not made by AHC and is not the basis of AHC's potential liability. This warranty can be analogized to the sale of bus tickets at issue in *Gelfand v. Tanner Motor Tours, Ltd.,* 339 F.2d at 321–22. In that case the Second Circuit held that although the bus tickets were sold in New York, the defendants' liability could not be said to arise out of the sale of these tickets in New York because the cause of action was founded in tort, not contract. *Id.* Similarly in the case at bar, AHC's liability arises, if at all, out of its sale of the aircraft, not out of the warranty which ran from Avco to the consumer. I conclude, therefore, that AHC has transacted no business in Connecticut out of which this cause of action can be said to arise and that there is, therefore, no basis for asserting personal jurisdiction over AHC pursuant to Conn. Gen.Stat. § 33–411(b). AHC's motion to dismiss is, therefore, granted.

SO ORDERED.